Frank Lawson REED, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–88–00056–CR.

Court of Appeals of Texas,
San Antonio.

March 31, 1989.

Jerry D. Conner, Patricia R. Saum, and Conner & Dryer, Houston, for appellant.

Ronald L. Sutton, Dist. Atty., Junction, for appellee.

Before BUTTS, PEEPLES and CARR, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a conviction for possession of phenylacetone and methylamine with intent to manufacture methamphetamine. The trial court found appellant guilty and assessed his punishment at eight years' imprisonment.

Appellant brings four points of error: the first challenging the adverse ruling on his motion to suppress evidence; the second questioning probable cause to arrest appellant; the third challenges the sufficiency of the evidence to support the conviction; and last he argues that the judgment upholding the conviction for a first degree felony is void.

Department of Public Safety Officer Dennis Land testified at the pretrial suppression hearing that officers began investigation on and surveillance of rural property located a few miles from Junction in December 1984. Located on the land comprising over fifty acres was a cabin. Pictures of the cabin introduced in evidence show it to be a one-story frame building with boarded-up windows and an observation tower on top. There is no running water and no bathroom. The owner is Alan Gardner. Land testified that he surveilled the property on December 11, 1985, and saw a man outside the cabin. At that time he was on property of the adjoining land owner. He was directed by that person to a place where fifteen to twenty abandoned five-gallon ether cans were located on the Gardner ranch.[1] Although he could see the empty cans while on the adjoining property, he could not confirm what they were until he crossed the fence and went onto Gardner's land. At that time he smelled strong odors of the chemicals used in the manufacture of methamphetamine.

The evidence showed that Land together with another officer and an informant went to the property in December 1984. The informant, presumably a hunter, had been in the cabin and apparently reported it had been "abandoned." The informant had smelled strong chemical odors on the premises and went inside. He found what appeared to be a "clandestine lab." Land and the other officer went into the cabin where they smelled strong chemical odors at that time. Land began a periodic surveillance of the property trying to get by the loca-

---

1. Ether is used in the manufacture of methamphetamine.

tion on a weekly basis. It was not until December 1985 that officers observed activity on the property which indicated the manufacture of methamphetamine was occurring. The trial court, subsequent to the preliminary hearing, carried the motion to suppress through the trial and overruled it at the close of trial.

On December 7, 1985, Land, observing from a pump station on adjoining property, saw a man outside the cabin, lights in the cabin, and a vehicle parked outside. Once on Gardner's property, and "downwind," he detected the peculiar odors of the chemicals used in the manufacture of methamphetamine. He also saw and heard exhaust fans at the cabin. It was established that exhaust fans are used to rid the "lab" premises of strong and sometimes dangerous fumes.

In point of error one appellant attacks the validity of the search warrant in that the affidavit of officer Land did not contain allegations sufficient to constitute probable cause. Appellant argues the information in the affidavit was "stale"; the information does not show the surveillance disclosed criminal behavior; neither the credibility, reliability of the informant nor the basis of his knowledge is shown; the information discloses violation of the Fourth Amendment of the United States Constitution as well as the Texas Constitution (unreasonable search and seizure); and the affidavit contains false information.

▇▇▇ In the present case the "standing issue" was argued before the trial court, which ruled that neither appellant nor his co-defendant, Edward Francis Crawford, had the requisite standing to move to suppress the evidence resulting from execution of the search warrant at the cabin. The Court's decision in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), makes it plain that the question of a defendant's reasonable expectation of privacy is an issue going to the merits of his Fourth Amendment claim. The defendant bears the burden of proving that he had a legitimate expectation of privacy in the premises searched. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.

2d 633 (1980). *See Wilson v. State*, 692 S.W.2d 661, 667 (Tex.Crim.App.1984). The evidence here showed that appellant and Crawford burned some of the materials from the methamphetamine lab, buried others, and disposed of others before loading a white pickup (Gardner's) with phenylacetone and methylamine and other supplies and equipment. They abandoned any remaining items left in the cabin.

In addition, appellant testified that he drove to the land located a few miles outside Junction from his home in Round Rock (about 150 miles), turned around and returned to Round Rock because the items he was to haul as a favor to Gardner were not ready to be loaded. He also said he required some medication from home. Thus he drove an additional 150 miles in return and came back the next evening, a total of approximately 450 miles. He expressly denied any proprietary interest in the cabin. We agree with the trial court that appellant did not sustain his burden of showing a substantive Fourth Amendment and Texas Constitutional right to a legitimate expectation of privacy in the cabin and the surrounding land. We find further appellant did not have a reasonable and legitimate expectation of privacy in the premises at the time of the search and seizure, because he had clearly abandoned the premises with no intention of returning. *Villarreal v. State*, 708 S.W.2d 845, 849 (Tex.Crim.App. 1986). Point of error one is overruled.

The evidence showed that appellant drove a brown pickup truck to the location, stopping at the bottom of a hill. From there a steep road led to the cabin. The weather was cold and icy. Appellant and Crawford, who is a chemist, loaded all the saved items into a white pickup (Gardner's) at the cabin. Observing them in these activities from early morning until their arrest later were several officers. One officer, Jesse Salazar, testified that he was a San Antonio city police officer with ten years experience who was assigned to the Drug Enforcement Administration. He participated in the surveillance "twelve to fifteen times." He located himself at the pump station early on the morning of De-

cember 12, 1988. At trial he testified that the odors were strong, pungent chemical odors identified with the manufacture of methamphetamine at clandestine laboratories. He saw two men burn certain products and later identified appellant and Crawford by the clothing they wore. Salazar and officer Bywaters observed the early morning events together.

Officer Tommy Reyna testified that he had been a narcotics investigator with the Department of Public safety for seven years. He was part of the surveillance team, arriving back at the scene about 8:00 A.M. on the 12th. He and Trooper Delbert Roberts received radio communication to stop the Ford truck leaving the "lab site area." This was the white truck driven by Crawford. Reyna drove the truck back to the cabin.

Land had secured a search warrant from the district judge in Brady and was driving to the scene that early morning when he was notified the subjects were leaving. The two men had loaded everything in the white pickup and transported it down the road to the brown pickup where the items were then divided between the two vehicles. Both trucks proceeded off the property. Land issued a radio order to stop them and arrest each one when they reached the highway. Both appellant and Crawford were arrested. The trucks were taken to the cabin and searched and contraband recovered.

■ The question is whether there existed probable cause to arrest appellant without a warrant and seize the items in his pickup. There was evidence that officer Land had six years' experience as a narcotics officer with the Department of Public Safety, and before that he was a trooper (from 1973). He had attended law enforcement schools where he learned to detect and identify methamphetamine as to possession, manufacturing, and use. He stated he had seized methamphetamine in other cases. DEA Special Agent Steve Combs, had been contacted first by the informant-hunter. Combs and Land were shown where the informant had placed items he took from the cabin. A subsequent analysis of these early retrieved items at the Texas Department of Public Safety laboratory disclosed traces of methamphetamine. On the day in 1984 that Combs and Land went into the cabin they smelled a strong odor of chemicals which from their experience they associated with the manufacture of methamphetamine. Land was able to identify certain known individuals, later named in the search warrant, who were seen on the property at different times.

Land believed he saw Alan Gardner at the property on December 7, 1985, when the lights in the cabin stayed on all night. It was actually the co-defendant who was present. Land surveilled the property "periodically" from that date to December 11, 1985. It was at that time he saw the ether cans discarded about 75 yards from the rear property fence line. He then approached the cabin, heard the exhaust fans running and again smelled strong chemical odors associated with the manufacture of methamphetamine. As set out in the affidavit, the informant had identified on the premises "an unknown quantity of ethyl ether contained in black cans, triple beam balance scales, oxygen pumping motor ring stand, sodium hydroxide, hot plates, electric chemical mixer, funnels, strainers, spatula, rubber surgeon tubing, universal bandage scissors and numerous ring clamps for a ring stand." It was shown that these items are known by officers and DPS chemists to be used in the manufacture of methamphetamine.

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) the Supreme Court abandoned the rigid two-prong test for determining whether an informant's tip establishes probable cause as delineated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The appellate courts now examine the particular factual context and apply a "totality of the circumstances" standard. Texas has extended the application to warrantless arrests and searches. *See Eisenhauer v. State*, 678 S.W.2d 947 (Tex.Crim.App.1984).

Land and other officers smelled the familiar (to trained officers) odors of chemi-

cals associated with the manufacture of methamphetamine on more than one occasion emanating from the cabin; items implemented in the manufacturing process had been recovered and identified; officers observed the burning and the destruction of some of the items used; and officers observed the loading of the pickup truck with the saved items. These observations and perceptions which occurred during the ongoing surveillance substantially corroborated by independent on-site investigation the informant's tip.

■ That some of the events giving rise to the search and seizure began one year earlier does not create "staleness," because *at the time* of the arrest there was a great likelihood of finding the contraband. If such past information and subsequent investigation contribute to an inference that probable cause exists *at the time* of the arrest and discovery of the contraband, then the age of the information does not create a taint of staleness.

■ Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed. *See Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949); *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); *Woodward v. State*, 668 S.W.2d 337, 345 (Tex.Crim.App.1982). The experience and expertise of an officer may be taken into account in determining whether probable cause is present. *See* LAFAVE, 1 SEARCH AND SEIZURE, *Probable Cause* § 3.2(c) (2d ed. 1987). In the present case Land, Salazar and other officers identified lab equipment and supplies by sight. The officers smelled distinctive and pungent chemical odors associated with this offense and were qualified to know the odor. *See, e.g., Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

At the time appellant and Crawford were stopped and arrested, the officers had within their knowledge those matters previously delineated; they knew that materials and items from what they had concluded to be a "clandestine methamphetamine lab" had been loaded into the white pickup and that the two vehicles driven by the two men were leaving the area. Once the vehicles were stopped, strong odors of chemicals emanated from the boxes and packages in the pickups as well as from appellant and Crawford themselves. Leaving aside the subject of the search warrant,[2] we find that these circumstances were more than sufficient to constitute probable cause to stop the vehicles, place the drivers under arrest, and search the vehicles for contraband. Although exigent circumstances did exist in this instance, it would not be necessary that exigent circumstances be present. The fact that a vehicle may be held at a police agency and could be held long enough to secure a warrant before conducting a search does not make the search [on the highway] unlawful or unreasonable. *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). *See Sanchez v. State*, 582 S.W.2d 813, 815 (Tex.Crim.App.1979). Point of error two is overruled.

■ The third argument is that the evidence is insufficient to support the conviction. TEX.REV.CIV.STAT.ANN. art. 4476–15 (Vernon Supp.1989) provides in pertinent part:

Sec. 4.02(a) For the purpose of establishing criminal penalties for violation of this Act, there are established the following groups of controlled substances:

\* \* \* \* \* \*

(b) Penalty Group 1. Penalty Group 1 shall include the following controlled substances:

(7) Phenylacetone and methylamine, if possessed together with intent to manufacture methamphetamine;

\* \* \* \* \* \*

2. The search warrant named persons other than appellant. It provided, however, for the arrest of "persons unknown to affiant who may be at the cabin." It was not necessary to name appellant in the search warrant. *Hodges v. State*, 604 S.W.2d 152, 154 (Tex.Crim.App.1980).

Sec. 4.03(a) Except as authorized by this Act, a person commits an offense if he knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 1.

In reviewing sufficiency of the evidence, the reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). " 'Possession' means actual care, custody, control or management." TEX.REV.CIV.STAT. ANN. art. 4476–15, § 1.02(36) (Vernon Supp.1989); *Humason v. State,* 728 S.W.2d 363, 365 (Tex.Crim.App.1987). The accused must know the matter possessed was contraband. *Sinor v. State,* 612 S.W.2d 591, 592 (Tex.Crim.App.1981). In addition, possession must be a voluntary act. TEX.PENAL CODE ANN. § 6.01(b) provides:

(b) Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control.

Furthermore, possession of the controlled substance need not be exclusive and evidence which shows the accused jointly possessed the controlled substance with another is sufficient. *Oaks v. State,* 642 S.W.2d 174, 176 (Tex.Crim.App.1982).

In the present case appellant testified that he drove his brown pickup from Round Rock to the cabin location as a favor to Alan Gardner. He arrived about 9:00 p.m. on December 10, 1985, but left immediately when Crawford told him the "stuff" was not ready to be loaded. He returned to Round Rock. At that time he talked with Gardner again. Appellant drove again to the cabin the following night. He said he had been told the white pickup (Gardner's) would be parked at the bottom of the hill on the road leading to the cabin. The weather was extremely cold and there was ice on the steep road. Apparently the white pickup could climb the hill easier. Appellant left his truck and drove the other one up the icy road. He stated it was "scary." [A police car was later driven to the cabin by a back road because it was easier.] Although the cabin lacked conveniences such as water and bathroom facilities, and possibly heat, appellant stayed that night. The evidence stressed that the chemical odors in the cabin were so overpowering they could be detected 75 yards away.

Appellant stated that when he arrived the first time Crawford was cleaning up some "trash" at the cabin for Gardner. He said Crawford told him, from the way it smelled, he thought it was some kind of a lab set-up. Crawford said he was not ready to move the stuff out. Crawford said he thought it might be dangerous chemicals or something that could harm appellant. So, appellant said, he had not stayed. In spite of this he did stay the second night.

As soon as it was "light," the two began burning items. They loaded everything they were going to remove and take with them into the white pickup. Then they transferred part of it to the brown pickup at the bottom of the hill. Appellant was to deliver his load to Gardner. Appellant was stopped and arrested as he drove onto the highway.

Appellant denied he was committing an offense, stating that he merely went there to "haul some junk off," and to "clean it [the cabin] up." Pictures of the interior of the cabin clearly refute that the cabin was "cleaned up." Appellant and Crawford were returned to the cabin, and the search warrant was executed then. Appellant said he had been told by Gardner to give Crawford time to get ready for appellant to come to the cabin to haul off the stuff. What he was to "haul back" was scattered all over the cabin, "boxes and stuff." He smelled an "overpowering smell." And from what Crawford "told me, that's what we was gonna be hauling back." On the first trip Crawford told him some of the materials were dangerous and Crawford did not want to put his life in jeopardy.

The prosecutor asked him why he returned and loaded his pickup with "something that might blow." He repeated it was as a favor.

The evidence indicated that each pickup was about one-fourth full and that the white pickup could have carried the entire load.

Appellant admitted he carried "a couple of bags of stuff out there" to burn on the morning of the 12th. The prosecutor asked, when he saw Gardner after the first trip,

Q. [D]id you say, "Hey, Mr. Gardner, did you know somebody had an illegal drug laboratory out there at your place"?

A. No, I didn't tell him that.

Q. ... You went out there because he was your good friend; you were gonna drive 300 miles to go out and clean out his house, and knowing that some of the stuff may be explosive, and you didn't even tell him that there may be an illegal drug lab out there after you talked with Crawford about it?

A. —Gardner, it was my understanding that was why he got Mr. Crawford out there, that he suspected when he went to check on his utilities and stuff, or—something like that could be happening out there.[3]

Appellant agreed there might have been "some chemicals" that he helped to burn.

Recovered from appellant's pickup truck were 18 pounds, 9¾ ounces of methylamine and 9 pounds, 10¼ ounces of phenylacetone, along with other items and equipment used in the manufacture of methamphetamine. Appellant's "upper clothing" was seized. There was evidence that the strong chemical odor emanated from appellant and appellant's clothing.

Direct evidence directly demonstrates the ultimate fact to be proven, whereas circumstantial evidence is direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be prov-

en. *Taylor v. State,* 684 S.W.2d 682, 684 (Tex.Crim.App.1984). Although appellant depends entirely upon circumstantial evidence cases, we perceive this more as a direct evidence case.

To show unlawful possession of contraband there must be proof of independent acts and circumstances which affirmatively link the accused to the contraband in such a manner that it can be concluded that he had knowledge of the contraband as well as management or control over it. *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App.1985).

Affirmative links shown in the present case as to appellant were: (1) Appellant drove 450 miles to aid in carrying the ingredients to manufacture methamphetamine to Gardner. (2) Prearrangements regarding the pickup blocking the entrance at the bottom of the icy road were made. (3) On the first trip he was met by an "overpowering" odor and was told the chemicals were dangerous but returned the next night. (4) He was told by Crawford that the "stuff" as not "ready." The trial court could conclude that Crawford was "cooking" methamphetamine, and it was not yet ready. (5) Upon returning appellant spent the night at the cabin minus any amenities, but the two men did not leave until the next morning. (6) At first light, the two burned and destroyed chemicals and items involved. (7) Appellant helped load both pickups. (8) Appellant drove his pickup alone with the volatile chemicals and other items used in the manufacture of methamphetamine. Some items were in the front seat with him. (9) Crawford had in his pocket some methamphetamine, the finished product. (10) Appellant's clothing was permeated with the strong odor of the chemicals used. (11) Appellant had opportunity and sufficient time to permit him to terminate his control of the contraband, but he declined to do so.

Sitting as the trier of fact, the trial judge is entitled to accept or reject any or all of the testimony adduced. *Wright v. State,*

---

**3.** The evidence reflected that neither Gardner nor anyone else had ever complained to law enforcement officials.

603 S.W.2d 838, 840 (Tex.Crim.App.1980). Reconciliation of conflicts and contradictions in evidence is within the province of the factfinder, and such conflicts will not call for reversal if there is enough credible testimony to support the conviction. *Bowden v. State,* 628 S.W.2d 782, 784 (Tex. Crim.App.1982).

The trial judge as the sole judge of the credibility of the witnesses was entitled to disbelieve appellant's version. *Wicker v. State,* 667 S.W.2d 137, 141 (Tex.Crim.App. 1984).

The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believes the evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *Wicker v. State,* 667 S.W.2d at 143.

■■■ The offense charged is a specific intent offense, i.e. "with intent to manufacture methamphetamine." A person acts with intent with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX.PENAL CODE ANN. § 6.02(a) (Vernon 1974). Intent can be inferred from the acts, words, and conduct of the accused. *Dues v. State,* 634 S.W.2d 304, 305 (Tex.Crim.App.1982). In this case the trial court could consider all the actions of appellant as set out before. In addition the conclusion may be reached that appellant knew what Crawford was manufacturing, or attempting to manufacture, given the small confines of the cabin and the strong chemical odors emanating from it.

"In determining whether one has participated as a party ... reliance may be placed on actions of the parties which show an understanding and common design to do a certain act." *Tarpley v. State,* 565 S.W.2d 525, 529 (Tex.Crim.App.1978); TEX.PENAL CODE ANN. §§ 7.01; 7.02 (Vernon 1974). We find the evidence shows a common design and understanding by appellant to aid and encourage the commission of the

offense as well as direct participation by him. Viewing the evidence in the light most favorable to the prosecution, we find the evidence is sufficient to support the conviction. The point is overruled.

In point of error four appellant argues that the judgment is void because the trial court erroneously assessed punishment for a first degree felony conviction. We do not agree.

TEX.REV.CIV.STAT.ANN. art. 4476–15 (Vernon Supp.1989) provides in part:

Sec. 4.02(a) For the purpose of establishing criminal penalties for violation of a provision of this Act, there are established the following groups of controlled substances:

(b) Penalty Group 1 shall include the following controlled substances:

\*　　\*　　\*　　\*　　\*　　\*

(7) Phenylacetone and methylamine, if possessed together with intent to manufacture methamphetamine.

\*　　\*　　\*　　\*　　\*　　\*

Sec. 4.03(a) Except as authorized by this Act, a person commits an offense if he knowingly, or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 1.

(b) An offense under subsection (a) of this section is a felony of the first degree if the amount of the controlled substance manufactured, delivered, or possessed with intent to manufacture or deliver is, by aggravate weight, including any adulterants or dilutants, less than 28 grams.

\*　　\*　　\*　　\*　　\*　　\*

Appellant's argument has been decided adversely to his position in *Hodges v. State,* 604 S.W.2d 152, 155–56 (Tex.Crim.App. 1980). The *Hodges* indictment was like the present indictment. The court stated that "[i]f the substance is possessed with the requisite intent to manufacture, an offense under § 4.03(a) is committed. If there is no such intent to manufacture, there is no offense." The *Hodges* conviction was set aside because the assessed punishment of four years "is less than the minimum of

five years allowed by law." 604 S.W.2d at 156. This is the minimum punishment for a first degree felony. The point is overruled.

The judgment is affirmed.

