Jennifer Louise PORTER, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 04–90–00036–CR, 04–90–00098–CR.

Court of Appeals of Texas,
San Antonio.

March 13, 1991.

Steven J. Pickell, Kerrville, for appellant.

Susan Patterson, Asst. Dist. Atty., Kerrville, for appellee.

Before: REEVES, C.J., and PEEPLES and BIERY, JJ.

## OPINION

BIERY, Justice.

Appellant, Jennifer Louise Porter, was indicted for the offenses of Manufacturing and Possession with Intent to Deliver a

Controlled Substance Analogue, N–Hydroxy 3, 4–Methylenedioxy Amphetamine (N–Hydroxy MDA), in an amount greater than 28 grams but less than 400 grams. The jury found her guilty on both counts and sentenced her to 15 years' imprisonment and a $2,500 fine for the offense of manufacturing and 12 years' imprisonment and a $2,500 fine for possession with intent to deliver.

Appellant brings four points of error contending that her motion to quash and dismiss indictment should have been granted due to constitutional defects in the Controlled Substance Analogue Statute; her motion to dismiss should have been granted based on the objection to scheduling of N–Hydroxy 3, 4–Methylenedioxy Amphetamine; there was insufficient evidence to support either conviction; and the prosecutor committed reversible error during cross-examination regarding her exercise of the right to remain silent after arrest. We affirm.

■ In her first point of error, appellant presents a question of first impression by asserting that her motion to quash and dismiss the indictment should have been granted because of constitutional defects in the Controlled Substance Analogue Statute. Appellant filed a motion to quash and dismiss indictment prior to trial complaining that the statute under which the prosecution was brought was void and unenforceable. Appellant asserts that under TEX.REV.CIV.STAT.ANN. art. 4476–15, § 3.10 (Vernon Supp.1987), in effect at the time of her arrest, the offenses for which she was charged subjected her to two inconsistent penalties.[1] Section 3.10(a) provided that a controlled substance analogue of a controlled substance in Schedule I or Penalty Group I shall be treated as a controlled substance in Penalty Group I. Section 3.10(b) provided that the punishment for manufacturing or possession of a controlled substance described in subsection (a) was according to the provisions of § 4.03 making the offense a first degree

---

1. All textual statutory references hereafter are to the Texas Controlled Substances Act, TEX. REV.CIV.ANN. art. 4476–15 (Vernon Supp. 1987). The analogue statute is now located in TEX.HEALTH & SAFETY CODE ANN. § 481.123 (Vernon Supp.1991).

felony. In contrast, § 3.10(d) provided that a controlled substance analogue of a controlled substance in Schedule II or Penalty Group II shall be treated as a controlled substance in Penalty Group II and subject to punishment according to § 4.031 making the offense a second degree felony. At the time of the offense, 3, 4–Methylenedioxy Amphetamine was listed in Schedule I and Penalty Group II and appellant argues that the statute subjected her to punishment under § 4.03 as a Penalty Group I substance and § 4.031 as a Penalty Group II substance. Appellant further contends that because the statute provided different ranges of punishment, it could not be applied according to any certain, consistent and uniform standard and was incapable of being understood. The appellant claims that from reading the indictment, she could not determine whether she was charged with a first or second degree felony. In addition, appellant claims the punishment would differ depending upon the quantity of substance shown to have been possessed and further subject to the discretion of the State in wording the indictment. Appellant claims she could have been subjected to a third range of punishment because the evidence at trial showed that the actual amount of substance found was 428 grams, not between the range of 28 to 400 grams as set out in the indictment. The law therefore, did not give her notice of what conduct would subject her to the lesser or greater penalty range and was so indefinite as to be inoperative and void.

■■■ Whenever the constitutionality of a statute is being questioned, the presumption is that the statute is valid and that the Legislature did not act unreasonably or arbitrarily in enacting the statute. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim.App.1978). It is the duty of the court to construe a statute so that the legislative intent of enacting constitutional laws will be carried out. *Dahl v. State*, 707 S.W.2d 694, 697 (Tex.App.—Austin 1986, pet. ref'd). The court is to give a rational and sensible construction to the statute and enforce its intent even if the intent is not completely consistent with the statute's language. *Id.* It is the challenger who

bears the burden of establishing that the act is unconstitutional. *Granviel*, 561 S.W.2d at 511. The challenger must show that the statute is unconstitutional as it operates in his/her particular situation. *Bynum v. State*, 767 S.W.2d 769, 774 (Tex. Crim.App.1989). The fact that the statute may be unconstitutional to another is not sufficient. *Id.* Appellant contends that because the statute as applied to her provides for different penalties, it is unconstitutionally vague and so indefinite as to be inoperative and void ab initio citing *Moran v. State*, 135 Tex.Crim. 645, 122 S.W.2d 318 (1938); *Ex parte Sanford*, 163 Tex.Crim. 160, 289 S.W.2d 776 (1956); *Stevenson v. State*, 145 Tex.Crim. 312, 167 S.W.2d 1027 (1943). A review of these cases shows that both *Sanford* and *Stevenson* rely on *Moran* for the proposition that whenever two articles of the penal code define the same offense but provide different penalties, the law is so indefinitely framed or of such doubtful construction that it cannot be understood and is regarded as wholly inoperative. *Moran*, 122 S.W.2d at 320. In *Moran*, two different statutes provided for different penalties and the court held the statutes inoperative under the requirements of the Penal Code. The above decisions, however, were based upon former Article 6 of the Penal Code which has since been replaced by TEX.PENAL CODE ANN. § 1.02 (Vernon 1974). Section 1.02 now sets out the code's objectives. One objective is that by definition and grading of offenses, fair warning is given of what is prohibited and the consequences of the violation. The statutory language relied upon in *Moran* is no longer a part of the code and the new provisions do not contain the "wholly inoperative" language voiding the statutes ab initio.

■■■ Appellant also asserts the statute is void for vagueness, a violation of her due process rights under the 5th and 14th amendments to the United States Constitution and article 1, § 19 of the Texas Constitution. The void for vagueness doctrine requires "that the penal statute define the criminal offense with sufficient definiteness that ordinary people can understand

what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). A review of the statute shows that § 3.10 appears to allow two different penalties provided that the controlled substance is listed in a Schedule and Penalty Group with different numbers. Section 3.10(a) provides that a controlled substance analogue, which is of a chemical structure substantially similar to the chemical structure of a controlled substance in Schedule I or Penalty Group I, shall be treated as a controlled substance in Penalty Group I. An offense under subsection (a) is punishable according to § 4.03. Section 4.03 provides that a person commits an offense if he knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group I. The offense under this section is a first degree felony if the amount is less than 28 grams and is considered an aggravated offense if the amount is 28 grams or more. The same basic scheme is carried out in § 3.10(d) which provides that a controlled substance analogue found in Schedule II or Penalty Group II is a Penalty Group II substance and punished according to § 4.031. Section 4.031 provides that the offense is a second degree felony and is aggravated if the amount is 28 grams or more. The uncertainty lies in whether the Schedule or the Penalty Group controls. Section 4.02 of the act provides that "[f]or the purpose of establishing criminal penal-

ties for violation of a provision of this Act" four Penalty Groups are established. This indicates that the legislative intent was for the Penalty Group and not the Schedule to control.[2]

■ Appellant claims that because 3, 4-Methylenedioxy Amphetamine was listed in Schedule I and the language of § 3.10(a) treated it as a Penalty Group I substance, she *could* have been subjected to the punishment for a first degree aggravated felony instead of the second degree aggravated felony. In addition, because the evidence at trial showed the actual quantity of the substance was 428 grams, it was *possible* that she would be subject to a third range of punishment thus making the statute's application arbitrary and uncertain. A review of the indictment shows that appellant was charged with the manufacture and possession of a controlled substance analogue in an amount of 28 grams or more but less than 400 grams, clearly tracking the language of § 4.03(d)(1) and giving her notice that she was charged with a second degree aggravated felony. In addition, in the court's charge to the jury for punishment, the language again tracked the language in § 4.03(d)(1) and the sentences given were within the stated range.[3] A statute is not unconstitutionally vague simply because the defendant might not know in advance within what range of penalties he will actually be charged as long as the statute sufficiently describes the offense, giving a person of ordinary intelligence fair notice that the contemplated conduct is forbidden. *Earls v. State,* 707 S.W.2d 82, 86

2. In *Chalin v. State,* 645 S.W.2d 265, 269 n. 3 (Tex.Crim.App.1982), the court noted that the Texas Controlled Substances Act was unlike the federal statute in that changes in the schedules did not effect changes in criminal penalties. Changes in schedules affect only the regulatory scheme whereas criminal penalties were only affected by legislative action on the separate penalty groups in § 4.02.

3. The punishment for an aggravated offense under Penalty Group I was as follows: 1) life imprisonment or a term of 5–99 years and a fine not to exceed $50,000 if the amount of the controlled substance was 28 grams or more but less than 200 grams; 2) life imprisonment or a term of 10 to 99 years and a fine not to exceed $100,000 if the amount of the controlled sub-

stance was 200 grams or more but less than 400 grams; 3) life imprisonment or a term of 15 to 99 years and a fine not to exceed $250,000 if the amount of the controlled substance was 400 grams or more. The punishment for an aggravated offense under Penalty Group II was as follows: 1) life imprisonment or a term of 5 to 99 years and a fine not to exceed $50,000 if the amount of the controlled substance was 28 grams or more but less than 400 grams; and 2) life imprisonment or a term of 10 to 99 years and a fine not to exceed $100,000 if the amount of the controlled substance was 400 grams or more. Appellant received 15 years' imprisonment and a $2,500 fine for the offense of manufacturing and 12 years' imprisonment and a $2,500 fine for the possession offense.

(Tex.Crim.App.1986). Appellant does not contend that she did not know that the manufacture or possession was illegal.

In addition, before a court decides the constitutionality of a statute, it must first ascertain with certainty that the party raising the claim has presently been injured by the statute. *Meshell v. State,* 739 S.W.2d 246, 250 (Tex.Crim.App.1987). A constitutional attack may not be premised on the apprehension of possible harm in the future. *Ex parte Spring,* 586 S.W.2d 482, 485 (Tex.Crim.App. [Panel Op.] 1978). This requirement is based upon the reluctance to decide constitutional questions unless absolutely necessary. *Id.* We agree with appellant that the legislative scheduling of 3, 4–Methylenedioxy Amphetamine in Schedule I and Penalty Group II creates confusion when read in conjunction with §§ 3.10(a) and 3.10(d), and that legislative clarification would be appropriate. However, because appellant was sentenced within the range of the lower degree felony, we are not persuaded that appellant has met her burden of showing she was harmed. The first point of error is overruled.

In point of error two, appellant asserts that her motion to dismiss was incorrectly denied because at the time of her offense, the scheduling of N–Hydroxy 3, 4 Methylenedioxy Amphetamine (N–Hydroxy MDA) was objected to by the Commissioner of the State Board of Health. The substance N–Hydroxy MDA was placed on the Federal Schedule I by the administrator of the D.E.A. on October 15, 1987. Section 2.09(e) provided that if any substance is designated as a controlled substance under federal law, the Commissioner of the State Board of Health is required to add the substance to the State schedules thirty (30) days after publication in the Federal Reg-

ister of a final order designating a substance as a controlled substance, unless the commissioner objects to the inclusion. On November 6, 1987, the Commissioner of the Texas State Board of Health issued an objection to the scheduling of this substance. Section 2.09(e) further provided that upon publication of objection to inclusion, control as to that particular substance under the Act was stayed until the commissioner published his decision. Therefore, appellant claims that any prosecution for manufacture or possession of N–Hydroxy MDA was stayed from November 6, 1987, until February 13, 1988, when the Commissioner issued an order sustaining his objection, and appellant was not subject to prosecution at the time she was charged.

As further support, appellant asserts that the doctrine of *in pari materia* [4] is applicable and provides that the special or more specific statute governs the general statute in the event of a conflict. *Breeding v. State,* 762 S.W.2d 737, 738–39 (Tex. App.—Amarillo 1988, pet. ref'd). Because of the Commissioner's objection to the scheduling of N–Hydroxy MDA pursuant to the specific provisions of Art. 4476–15, § 2.09, a stay was in effect at the time of the offense and prevented a conviction for manufacture and possession with intent to deliver because the substance was not subject to prosecution.

While it is true that the Texas Health Commissioner objected to the scheduling of N–Hydroxy MDA as a controlled substance, the underlying reason was because it was considered unnecessary as penalties were already provided for the manufacture and possession of this substance under the Controlled Substance Analogues Statute. [5] The basis for the prosecution was the fact that N–Hydroxy MDA was, at the time of the offense, a chemical analogue of MDA a

---

**4.** Statutes that deal with the same subject, have the same general purpose, or relate to the same person or thing are considered as being *in pari materia. Breeding v. State,* 762 S.W.2d 737, 739 (Tex.App.—Amarillo 1988, pet. ref'd).

**5.** The State introduced into evidence a copy of an inter-office memo from the Texas Department of Health which stated that the Commis-

sioner might want to object to the scheduling of N–Hydroxy 3, 4 methylenedioxy amphetamine because of penalties already provided for the manufacture, delivery or possession of a chemical analogue of a controlled substance. Because of these penalties, the placing of N–Hydroxy MDA into a Schedule of the Texas Controlled Substances Act was probably unnecessary.

substance listed in Schedule I and Penalty Group II of the Texas Controlled Substances Act. The indictment correctly alleged that the appellant manufactured and possessed with intent to deliver an *analogue* of a controlled substance, which was already covered under article 4476–15 § 3.10, TEX.REV.CIV.STAT.ANN.

■ Appellant's argument concerning the doctrine of *in pari materia* is misplaced because two conflicting statutes were not involved in this instance. What was involved was the Commissioner's decision not to schedule N–Hydroxy MDA as a controlled substance, pursuant to § 2.09(e), because a penalty was already in place for the substance as a controlled substance analogue. When two statutes govern the same subject matter, they are not *in pari materia* if they have different objects, intend to cover different situations, and are not intended to be considered together. *Alejos v. State*, 555 S.W.2d 444, 450–51 (Tex.Crim.App.1977). Therefore, the statute governing the decision not to schedule a drug as a controlled substance and the analogue statute which already governed the substance are not *in pari materia*. Appellant's point of error two is overruled.

■ In her third point of error, appellant asserts that the evidence was insufficient to support the conviction for the offenses of manufacturing and possession with intent to deliver a controlled substance analogue. The standard of review for sufficiency of the evidence is that the evidence must be examined in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Chambers v. State*, 711 S.W.2d 240, 245 (Tex.Crim.App. 1986). The issue on appeal is not whether the appellate court believes the prosecution's evidence, nor whether it believes the defense's evidence outweighs the state's evidence. *Reed v. State*, 769 S.W.2d 323, 330 (Tex.App.—San Antonio 1989, pet. ref'd). If there is evidence which establishes guilt beyond a reasonable doubt, and if

the trier of fact believes this evidence, the appellate court is not in a position to reverse the judgment on sufficiency of the evidence grounds. *Id.*

In the instant case, the State produced evidence that the laboratory operated at the ranch house was a sophisticated clandestine designer drug lab. The evidence also showed that appellant and another defendant, Sorenson, had known each other for about eight years prior to trial and had attended college together where Sorenson was known as a drug dealer and drug user to appellant's friends and roommates. Sorenson had moved into a garage apartment directly behind the house where appellant lived, and on several occasions, she and her roommates would accept packages marked "Fragile Glassware" and "Danger Flammable" for Sorenson when he was not home.

Appellant admitted visiting the ranch house on three other occasions prior to the weekend in question. On one of these visits, the evidence showed that appellant used her credit card to pay a deposit on a moving van so she and Sorenson could transport about 20 boxes from the Austin residence to the ranch house.

On the weekend of the arrest, appellant and Sorenson were seen arriving at the ranch house at approximately 8:00 p.m. Shortly thereafter, appellant was seen outside at the dump area. Appellant testified that she saw an enormous amount of empty chemical bottles at the dumpsite and realized that "something not proper had gone on out there." The next morning, appellant and Sorenson were observed drinking coffee from a glass lab beaker while sitting on the front porch. Later that morning, the officers saw appellant leave the ranch house after loading two ice chests into the vehicle. One of the ice chests had a very unusual hole cut out of the top with foam lining to exactly fit over a large "teepee" shaped beaker. Upon returning to the ranch, appellant was seen dragging the ice chests into the middle of the backyard (between the house and the lab) and Sorenson moving them the rest of the way (to the lab). Appellant testified that she made lunch upon her return and it

was at that time that Sorenson told her he was manufacturing drugs in the outbuilding. Appellant testified that she became very upset and wanted to leave immediately; however, she decided to stay when Sorenson told her they would leave later and that he would stop making the drugs. Appellant and Sorenson did leave the ranch house that evening but returned about 2:00 p.m. the next day. At that time, appellant began cleaning the kitchen but testified that she did not see the paper with the words "Designer Drugs" and a chemical formula written on it which was later found lying in plain view beside the kitchen sink. Appellant was also observed following Sorenson into the lab and returning carrying a white container and a glass beaker containing a yellow liquid into the house. Appellant admitted pouring the liquid into the sink, washing the beakers and putting them on the drainboard. In addition, both Sorenson and appellant were seen making several trips to the dump area prior to leaving the ranch house and were also observed moving large boxes of chemicals from the lab area to the smokehouse. About 4:43 p.m. that afternoon, appellant and Sorenson were seen loading personal belongings into the car and leaving shortly thereafter. The car was followed and the officers observed erratic driving behavior, the driver making U-turns and driving at various speeds, which the officers concluded was a "heat run" to avoid being detected. Appellant and Sorenson were stopped and later arrested. A search warrant was obtained to search the car and the premises. On the way back to the ranch, one officer testified that appellant had a strong odor about her which was the same odor that was found in the lab area.

Inside the house and outbuildings, the officers discovered a large amount of sophisticated laboratory equipment and glassware. One officer testified that when he walked into the kitchen, it was obvious that it looked more like a laboratory than a kitchen because of all of the different glassware. He testified there were very few dishes or any other items that normally would be found in a kitchen.

In this case, the jury was charged as to appellant's guilt or innocence under the law of parties. In determining whether one has participated as a party, reliance may be placed on actions of the parties which show an understanding and a common design to do a certain act. *Reed v. State*, 769 S.W.2d 323, 330 (Tex.App.—San Antonio 1989, pet. ref'd). Viewing the evidence in the light most favorable to the prosecution, we find the evidence sufficient to support appellant's convictions. Point of error three is overruled.

■ In her final point of error, appellant contends that the prosecutor's cross-examination regarding her silence after arrest was in violation of the fifth and fourteenth amendments of the U.S. Constitution and article 1, § 10 of the Texas Constitution and constituted reversible error.

■ As a general rule, when a defendant voluntarily takes the stand before the jury, the same rules apply as with any other witness and the defendant may be impeached, contradicted and cross-examined as to new matters. *Sanchez v. State*, 707 S.W.2d 575, 577 (Tex.Crim.App.1986); *Williams v. State*, 607 S.W.2d 577, 578 (Tex.Crim.App.1980). The defendant may not, however, be treated as any another witness where there are overriding constitutional or statutory prohibitions. *Sanchez*, 707 S.W.2d at 577.

In the case before us, appellant claims that the prosecutor cross-examined her regarding her silence after arrest. The record indicates that the prosecutor asked appellant if she followed the advice of Sorenson when he leaned into the window and told her not to say anything. Appellant responded that she did not follow the advice because Sorenson had told her, but rather because her mother, who was a criminal law attorney, and a relative, who was a police officer, had told her stories. From these stories, she knew to speak with a lawyer prior to making any statements. No objection was raised to this line of questioning. Prosecution then asked "Even though you stated that you never even saw that box of drugs in the trunk, you didn't ever jump out of the car and

say, 'Hey, I don't know anything about this.'?" Appellant's counsel objected stating prosecution was "making a comment on the defendant." When prosecution stated that this testimony was extremely relevant, appellant's counsel responded that appellant had a constitutional right to remain silent. The judge overruled the objection and stated that the prosecution could ask the question. The prosecution then asked "Before you were placed under arrest you have just testified that you didn't know anything about this. You didn't know this was illegal. Why wouldn't you tell the law enforcement that? That could have gotten you out and you would have never had to spend a day in jail down here." Appellant responded that the officers would not have believed her. A dialogue continued and appellant asserted that she was under arrest, that she got out of the car and someone was pointing a gun at her. The prosecution responded with the question that if people were pointing a gun at her and she did not know anything, why she did not make a comment. Appellant's counsel stated "same objection" which the court overruled. Prosecution again restated that appellant was not under arrest. Appellant's counsel responded by asking for a hearing outside the jury on this matter. The judge asked both sides to move on and stated he would allow them to get back into this matter, if they chose to do so, during a lunch break. There is no further testimony in this regard.

From the above record, prosecution's questioning regarding appellant's silence is not reversible error because the issue was not properly preserved for review by this court. It is fundamental that a timely objection must be urged at the first opportunity in order to preserve the error for review. *Cisneros v. State*, 692 S.W.2d 78, 82 (Tex.Crim.App.1985). When an objection is made, it must identify what is objected to and set forth grounds for the objections. *Id.* at 83. In *Cisneros*, the objection raised by counsel after lengthy cross-examination was "... I object. He had a right to remain silent from the time this took place until today." *Id.* at 82. The court held that the objection made was general and not sufficiently specific in nature to preserve error. *Id.* at 83. Likewise in this case, the objection made, albeit after several questions and responses between the prosecutor and appellant, was that the prosecution was "making a comment on the defendant." When prosecution stated that this testimony was extremely relevant, appellant's counsel responded that appellant had a constitutional right to remain silent. The prosecution continued by asking additional questions to which appellant's counsel stated "same objection." We hold the error, if any, was not preserved for review. Appellant's fourth point of error is overruled.

The judgment of the trial court is affirmed.

REEVES, C.J., concurs in result.