# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00348-CR

**Joseph Frank Tooker, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
### NO. 9622, HONORABLE JOHN GAUNTT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After Officer Fidel Morua discovered methamphetamine during a traffic stop, Joseph Frank Tooker was charged in a single indictment with one count of possession of less than one gram of a controlled substance (methamphetamine) and with one count of tampering with or fabricating physical evidence by "intentionally and knowingly conceal[ing] a baggie of methamphetamine . . . with intent to impair its availability as evidence." *See* Tex. Health & Safety Code §§ 481.102(6) (listing methamphetamine as substance included in "Penalty Group 1"), .115(a), (b) (providing that person commits offense by possessing "a controlled substance listed in Penalty Group 1" and that offense is state-jail felony if amount of controlled substance is "less than one gram"); Tex. Penal Code § 37.09 (a), (c) (setting out elements of offense of tampering with physical evidence and providing that offense is, in general, third-degree felony). At the end of the guilt-or-innocence phase, the jury found Tooker guilty of both offenses, and Tooker elected to have the

district court assess his punishment. At the end of the punishment phase, the district court determined that Tooker should be imprisoned for two years for the possession count and for five years for the tampering count but elected to place Tooker on community supervision for both convictions, and the district court rendered its judgments of conviction accordingly. *See* Tex. Penal Code §§ 12.34-.35 (setting out permissible punishment ranges for third-degree and state-jail felonies). In two issues on appeal, Tooker contends that the evidence was legally insufficient to support his convictions. We will affirm the district court's judgment of conviction for possession of a controlled substance, modify the judgment of conviction for tampering with evidence to correct a clerical error, and as modified, affirm the judgment of conviction for tampering with evidence.

## BACKGROUND

During a traffic stop, Tooker was arrested after methamphetamine was discovered by the investigating officers. Following the arrest, a trial was held in which the State called several witnesses to the stand, including Chelsa Hazle, who was Tooker's girlfriend at the time of the incident, and Officer Morua, who initiated the traffic stop, and Tooker elected to take the stand and testify on his own behalf.

In her testimony, Hazle explained that on the day in question she was riding as a passenger in her car with her boyfriend, Tooker, when Officer Morua initiated a traffic stop for speeding. Further, she explained that Officer Morua asked for her and Tooker's driver's licenses, that Officer Morua learned that there were warrants out for her arrest, that Officer Morua placed her under arrest, and that after she was arrested, she stood between her car and Officer Morua's police car with Tooker. Further, she recalled that she and Tooker had purchased methamphetamine prior

2

to the traffic stop, that she had methamphetamine "stashed in [her] bra," that she pulled "it out of [her] bra and slipped it into" Tooker's hands while they were hugging, and that Tooker knew that she had methamphetamine in her bra because he had seen her place methamphetamine in her bra "on other trips." When describing why she handed Tooker the methamphetamine, Hazle testified that she did it "[b]ecause [she] knew that [she] was going to jail, and if they had found it on me in the jail, then it would have been a charge of bringing drugs into a correctional facility." In addition, Hazle explained that she was also charged and sentenced for possession of methamphetamine as a result of this incident but that she was not asked to testify in this case until after she had already been sentenced. Moreover, Hazle admitted that she had been arrested for possession of methamphetamine before the incident at issue and that Tooker was present during one of those prior arrests.

After Hazle finished her testimony, Officer Morua was called to the stand. In his testimony, Officer Morua explained that during the traffic stop, he learned that there was "an active warrant" for Hazle "for possession of a dangerous drug." Further, he recalled that Hazle became upset when she learned that she was going to be arrested based on the warrant, that he asked Tooker if he would like to stand by Hazle to comfort her, and that Tooker went to stand with Hazle between her car and the police car. Moreover, Officer Morua related that when he later told Tooker to say goodbye to Hazle, Tooker "reached to give her a hug and a kiss, but his arms came to the front of him and front of" Hazle. In addition, Officer Morua testified that Tooker kept "his hands in the front of" Hazle. Furthermore, Officer Morua explained that after Tooker returned to the car, Officer Morua found "a baggy with some crystalized substance in it" on the ground by Hazle and that later testing performed on the substance revealed that it was methamphetamine. Moreover,

3

Office Morua testified that his dashboard camera and his body camera were working on the day in question and captured much of the exchange, and he explained that the recording from the dashboard camera captures Tooker "reach[] in front of [Hazle] with his hands . . . and . . . . move[] his right hand over" before "the baggy of meth f[e]ll to the ground." In addition, Officer Morua testified that he watched the recording from the dashboard camera in slow motion and that the recording shows Tooker drop the bag of methamphetamine.

During Officer Morua's testimony, the two recordings were admitted into evidence and played for the jury. The videos are generally consistent with Officer Morua's testimony, document that the traffic stop occurred at night, and show an officer assisting Officer Morua place Hazle in handcuffs with her hands in front of her after the officers confirmed that there was an active warrant for Hazle's arrest. Further, the video from the dashboard camera shows Tooker saying goodbye to Hazle, kissing Hazle, grabbing Hazle's hand and holding it for about five seconds near her chest, and then tossing something to the side away from where the officers were standing. In addition, the video documents how Tooker did not appear surprised or angry when he took something from Hazle's hand; on the contrary, the video shows that Tooker continued to kiss Hazel after tossing the item and did not inform the police about the object. Finally, the video chronicles how neither officer saw the baggie drop, how the officers continued to talk with Hazle as Tooker returned to the car, and how Officer Morua then discovered a baggie on the ground near where Tooker and Hazle had been standing, which contained a crystalline substance.

In his case in chief, Tooker testified on his own behalf. During his testimony, Tooker stated that he was aware that Hazle "had a drug habit," was present when she was arrested previously,

4

and asked Hazle after they were pulled over by Officer Morua if she had any drugs in her car, but he explained that he did not know that Hazle had methamphetamine or any illegal substances on the day in question and denied purchasing methamphetamine with Hazle. When discussing the contents of the recordings, Tooker stated that Hazle put something in his hand, that he "had an idea" about what the item was when "it hit [his] hand," that he "didn't want anything to do with it," and that he "drop[ped] it." Further, Tooker related that after dropping the baggie, he did not try to conceal it or otherwise tamper with it even though he could have easily put it in his pocket. Similarly, Tooker testified that he never intended to possess or conceal the drugs. During his cross-examination, Tooker denied attempting to conceal the baggie and stated that he dropped the baggie because he did not want to be implicated for the crime and that he did not tell the officers what happened after they found the baggie because he did not want "to tell on [his] girlfriend." When describing his interaction with Hazle, Tooker stated that his hand was in front of Hazle rather than behind her because he was not trying to hug her and was instead trying to hold her hand and kiss her.[1]

At the conclusion of the guilt-or-innocence phase, the district court gave the jury the jury charge. The jury charge provided instructions for the offenses of possession of a controlled substance and tampering with evidence and also contained instructions regarding when an individual may be held responsible for an offense committed by another person. In addition, the charge stated that Hazle was an accomplice and explained to the jury that additional requirements must be met before an accomplice's testimony may be used to convict someone of an offense.

---

[1] During Tooker's testimony, a portion of a recording from the body camera from the officer assisting Officer Morua was played for the jury. The content of that recording is consistent with that of the two recordings admitted into evidence during the State's case in chief and summarized above.

Following the closing arguments by both parties, the jury found Tooker guilty of both offenses.

**STANDARD OF REVIEW AND GOVERNING LAW**

Both issues on appeal concern the sufficiency of the evidence supporting Tooker's convictions. Under a legal-sufficiency standard of review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make "reasonable inferences from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a

6

reasonable doubt." *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320). Furthermore, reviewing courts "measure the sufficiency of the evidence by the so-called hypothetically correct jury charge, one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *See DeLay v. State*, 465 S.W.3d 232, 244 n.48 (Tex. Crim. App. 2014).

As discussed above, the jury instruction explained that Hazle was an accomplice to the offenses in question. *Cf. Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006) (providing that person indicted for same offense is accomplice as matter of law). "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. art. 38.14; *see also Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999) (noting that "[a] person is an accomplice if he participates before, during, or after the commission of the crime and can be prosecuted for the same offense as the defendant or for a lesser-included offense"). "When reviewing the sufficiency of non-accomplice evidence under article 38.14, we decide whether the inculpatory evidence tends to connect the accused to the commission of the offense." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011); *see Roys v. State*, 416 S.W.3d 229, 234 (Tex. App.—Amarillo 2013, pet. ref'd). In performing this analysis, "the reviewing court eliminates all of the accomplice testimony from consideration and then examines the remaining portions of the record." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). The non-accomplice evidence is viewed "in the light

7

most favorable to the verdict," *Knox v. State*, 934 S.W.2d 678, 686 (Tex. Crim. App. 1996), and it "need not directly link the defendant to the crime" or "'establish his guilt beyond a reasonable doubt'" on its own, *Roys*, 416 S.W.3d at 234 (quoting *Castillo*, 221 S.W.3d at 691). Although "the accused's mere presence in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense." *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). "Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration." *Id.* "[T]he tends-to-connect standard does not present a high threshold." *In re C.M.G.*, 905 S.W.2d 56, 58 (Tex. App.—Austin 1995, no writ). Moreover, as specified in the jury charge in this case, "[a] person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Penal Code § 7.02(a)(2).

## DISCUSSION

**Possession of a Controlled Substance**

In his first issue on appeal, Tooker asserts that the evidence was insufficient to support his conviction for possession of a controlled substance. On appeal, Tooker does not challenge the sufficiency of the evidence establishing that the substance found by Officer Morua was methamphetamine. Instead, Tooker contends that "[t]he only testimonial evidence that implicated Tooker came from his girlfriend Hazle" but that there was insufficient corroborating evidence linking him to the methamphetamine and that no evidence or reasonable inferences from the

8

evidence supports "the jury's ultimate conclusion that Tooker possessed methamphetamine on the night in question."[2] Moreover, he contends that "his so-called 'possession' of the contraband was fleeting and involuntary" and that "he abandoned the illicit drug" when he realized what it was. Furthermore, Tooker highlights that it was Officer Morua who suggested that he stand with Hazle

---

[2] When challenging the evidence supporting his conviction, Tooker discusses the fourteen factors that several courts have relied on when determining if the evidence was sufficient to establish that a defendant possessed a controlled substance when the evidence is not found on the defendant's person and is found in the presence of others, and Tooker then argues that only the first three of those factors supported the conviction here. *See Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). In particular, the court of criminal appeals has noted that the following factors "may circumstantially establish the legal sufficiency of the evidence to provide a knowing 'possession'":

> "(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt."

*Id.* (quoting *Evans v. State*, 185 S.W.3d 30, 36 (Tex. App.—San Antonio 2005), *rev'd on other grounds by Evans*, 202 S.W.3d 158). However, the court of criminal appeals noted that those factors "are not a litmus test." *Id.* Perhaps more importantly, it is not entirely clear that those factors apply in this case because Tooker was filmed holding, albeit briefly, the controlled substance at issue. *Cf. Robinson v. State*, 174 S.W.3d 320, 325 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (noting that "when the accused, like appellant, is not in exclusive possession of the place where the contraband is found, we cannot conclude that the accused had knowledge of and control over the contraband unless the State establishes an 'affirmative link' between the accused and the contraband"). In any event, in performing this review, "[i]t is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162. Accordingly, the presence of just a few factors would not seem to compel a conclusion that the evidence in this case was legally insufficient, particularly when those factors are coupled with the video evidence present in this case.

to console her.  In addition, Tooker urges that if he "intended to possess the drugs or to hide them, he could have done so," particularly since there was no indication given to him that he was not free to leave the scene.

Under the Health and Safety Code, a person commits an offense if he "knowingly or intentionally possesses a controlled substance."  Tex. Health & Safety Code § 481.115(a).  In this context, possess means to have "actual care, custody, control, or management."  *Id.* § 481.002(38).  Accordingly, "[t]o prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband."  *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control."  Tex. Penal Code § 6.01(b).  "Intent can be inferred from the acts, words, and conduct of the accused."  *Reed v. State*, 769 S.W.2d 323, 330 (Tex. App.—San Antonio 1989, pet. ref'd).

As set out earlier, in his testimony, Tooker explained that although he did not want the baggie, he surmised what the contents of the baggie were when Hazle placed it in his hand and further explained that he knew of Hazle's prior drug use and prior arrest and questioned her about whether there were drugs in the car.  In addition, the recordings showed that Tooker had no negative reaction when Hazle placed the baggie in his hand; on the contrary, Tooker continued to kiss Hazle after the baggie was placed in his hand before he ultimately dropped the baggie away from where the officers were located and made no mention of the baggie to the officers.  In light of Tooker's testimony as well as the contents of the recordings, the jury could have reasonably inferred that

10

Tooker knew that the baggie contained contraband and that he exercised "care, custody, control, or management" of the contraband, *see* Tex. Health & Safety Code § 481.002(38), "for a sufficient time to permit him to terminate his control," Tex. Penal Code § 6.01(b).

Even assuming for the sake of argument that this evidence would be insufficient to support the jury's verdict on its own, this evidence is sufficient to corroborate Hazle's testimony by connecting Tooker to the commission of the offense. *See* Tex. Code Crim. Proc. art. 38.14; *Smith*, 332 S.W.3d at 442. Moreover, as discussed earlier, Hazle testified that she and Tooker both purchased the methamphetamine together and that Tooker knew there was methamphetamine in her bra before she placed the baggie in his hand. In light of Hazle's testimony as well as the remaining evidence and testimony summarized above, the jury could have reasonably inferred that Tooker was aware that Hazle had methamphetamine hidden in her bra before he placed his hands near her chest and before Hazle placed the package in his hand and that Tooker exercised "care, custody, control, or management" of the baggie for a sufficient period of time. *See* Tex. Health & Safety Code § 481.002(38); Tex. Penal Code § 6.01(b). Alternatively, the jury could have determined that Tooker was guilty of the offense under the law of parties as set out in the jury charge by reasonably inferring that Tooker had the "intent to promote or assist" Hazle in committing the offense of possession of a controlled substance by encouraging or aiding her in the commission of the offense. *See* Tex. Penal Code § 7.02(a)(2).

For all of these reasons, we must conclude that the evidence was legally sufficient to support Tooker's conviction for possession of a controlled substance and, therefore, overrule his first issue on appeal.

11

**Tampering with Evidence**

In his second issue on appeal, Tooker contends that the evidence is legally insufficient to support his conviction for tampering with evidence. When challenging the sufficiency of the evidence, Tooker argues that there was no evidence "in the record from which a jury might reasonably *infer* that Tooker's abandonment of the contraband constituted an effort to hide, destroy[,] or conceal evidence with a corresponding intent to impair its availability as evidence in an investigation or proceeding." On the contrary, Tooker insists that "the only reasonable inference to be drawn from Tooker's act in throwing the contraband to the ground is that he wanted to abandon the object [and] to distance himself from the illegality of its possession," which he asserts is insufficient to support a conviction for tampering.

Under the Penal Code, a person commits the offense of tampering with physical evidence if he, "knowing that an investigation or official proceeding is pending or in progress, . . . alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding." Tex. Penal Code § 37.09(a)(1); *see also Hollingsworth v. State*, 15 S.W.3d 586, 595 (Tex. App.—Austin 2000, no pet.) (explaining that "[u]nder section 37.09, appellant must have concealed the cocaine with the *intent* to impair its availability as evidence in some kind of investigation"). "[I]n cases of tampering with evidence, not every act of discarding an object evinces an intent to impair the availability of that object as evidence in a later investigation or proceeding." *Thornton v. State*, 425 S.W.3d 289, 304 (Tex. Crim. App. 2014). In fact, "[t]here may be cases in which the most inculpating inference the evidence would support is that the accused simply intended to dispossess himself of the object in order to more

12

plausibly disclaim any connection to it," and "'it is within the province of the factfinder to choose which inference is most reasonable.'" *Id.* (quoting *Laster v. State*, 275 S.W.3d 512, 523 (Tex. Crim. App. 2009)).

In this case, the jury heard testimony from Tooker that he suspected what was in the baggie when Hazle gave it to him and viewed recordings showing that Officer's Morua's traffic stop transformed into an investigation regarding whether Hazle should be arrested for a prior warrant for possession of a controlled substance, that the interaction with the police occurred at night, that Tooker continued to hold onto Hazle's hand after she placed the baggie in his hand, that Tooker continued to kiss Hazle after he dropped the baggie, that he dropped the baggie on the side of him outside the view of the officers, that he made no effort to inform the officers about the baggie, and that the officers did not notice the baggie until after Tooker returned to the car. Moreover, the recordings documented that the baggie was small in size and transparent. In light of this evidence, the jury could have reasonably inferred that Tooker knew that an investigation was in progress when he dropped the baggie. *Cf. Lemarr v. State*, 487 S.W.3d 324, 326, 329 (Tex. App.—Amarillo 2016, no pet.) (concluding that it did not matter that "the focus of the pending investigation was the unauthorized use of a motor vehicle" and not possession of controlled substance when defendant "'poured [methamphetamine] out and . . . stuck the baggie in the door'" in order to prevent police from seizing it). Further, the jury could have reasonably inferred that Tooker believed that the police would have discovered the methamphetamine on Hazle after she was taken to the police station, that Tooker believed that it was possible to conceal the baggie from the police given the nature of the baggie and given that it was dark outside, that Tooker continued to hold Hazle's hand after she

13

handed him the baggie in order to conceal the baggie from the officers, that Tooker continued to kiss Hazle while dropping the baggie in an effort to avoid calling attention to the baggie, that Tooker tossed the baggie to the side of him not facing the officers in an effort to conceal the baggie from the officers with the intent to prevent the officers from discovering and using the evidence in the investigation, and that the officers did not initially notice the baggie due to the efforts undertaken by Tooker. *Cf. Thornton*, 425 S.W.3d at 304-06 (determining in attempted-tampering case that jury could have determined that defendant intended to conceal crack pipe rather than simply dispossess property, in part, because jury could have determined that defendant thought pipe was concealable due to facts that pipe was translucent and small and that sun was rising at time of alleged tampering; because jury heard evidence that defendant "'stealthily reached in [to his pocket]'" when attempting to dispose of pipe, which supported "a finding that he intended that the officers *never* notice the pipe"; and because defendant "'palmed' the pipe as he removed it from his pocket," which was "probative evidence of an *intent* to conceal the pipe" from officer's view); *Lemarr*, 487 S.W.3d at 329 (concluding in attempted-tampering case that evidence was sufficient where admissions by defendant established "that she had good reason to believe the baggie contained a controlled substance," that "she intentionally poured the contents of that baggie out during the initial detention," and "that she placed the baggie in the door pocket because she did not want to get caught with the drugs").

Accordingly, we must conclude that the evidence is legally sufficient to support Tooker's conviction for tampering with evidence and, therefore, overrule his second issue on appeal.

14

**Clerical Error**

Although Tooker does not raise this on appeal, we observe that the judgment of conviction for the tampering offense contains a clerical error. That judgment reflects that the presiding judge and the attorney for the State were both John Gauntt, but the record reveals that the attorney for the State was Jessica Guy. This Court has the authority to modify incorrect judgments when it has the information necessary to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). Accordingly, we modify the judgment to reflect that the attorney for the State was Jessica Guy.

## CONCLUSION

Having determined that there is a clerical error in the judgment of conviction for the offense of tampering with evidence, we modify that judgment in the manner set out earlier. Having overruled both of Tooker's issues on appeal, we affirm the judgment of conviction for possession of a controlled substance and affirm, as modified, the judgment of conviction for tampering with evidence.

_____

David Puryear, Justice

Before Justices Puryear, Field, and Bourland

Modified and, as Modified, Affirmed

Filed: October 27, 2017

Do Not Publish

15